(66 App. Div. 463.)

### ROWLEY v. FELDMAN et al.

(Supreme Court, Appellate Division, First Department. December 6, 1901.)

CONTEMPT PROCEEDINGS — ORDER FOR PAYMENT OF MONEY — AMOUNT — CERTAINTY.

Where an order for resale on foreclosure directed a delinquent purchaser at the first sale to pay any deficiency there might be between the amounts of the first and second sales, contempt proceedings could not be based thereon on the occurrence of a second sale showing a deficiency, as under Code Civ. Proc. § 14, subd. 3, authorizing punishment of a party for nonpayment of a sum ordered by the court in a case where execution cannot be awarded, the order must be for the payment of a definite amount.

Appeal from special term.

Proceedings by Horace T. Rowley against Rachel Feldman and others for the foreclosure of a mortgage. From an order adjudging Thomas F. Baldwin, a delinquent purchaser at foreclosure sale, in contempt, he appeals. Reversed.

Argued before HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

C. C. Sanders, for appellant.
John Ewen, for respondent.

PATTERSON, J. This is an appeal from an order adjudging Thomas F. Baldwin to be in contempt for failure to comply with an order dated the 22d of April, 1901, that order being made under the following circumstances: In an action for the foreclosure of a mortgage, the plaintiff had recovered a judgment directing a sale of mortgaged premises, and pursuant to such judgment such premises were sold on the 24th of February, 1901. Margaret Baldwin, the mother of Thomas F. Baldwin, was the holder of a second mortgage. Without her knowledge, her son made an arrangement with the plaintiff, by which he agreed, on behalf of his mother, to bid the property in for enough to protect the plaintiff and his mother's mortgage. He bid the sum of $24,900, and individually signed the terms of sale. His mother repudiated the transaction, and, Thomas F. Baldwin being unable to complete his purchase, an application was made by the plaintiff to the supreme court for an order directing a resale of the premises and to charge Thomas F. Baldwin and Margaret Baldwin with any deficiency that might arise on such resale. Upon that application an order was made directing a resale, and ordering that Thomas F. Baldwin pay to the referee the amount of any deficiency there might be between $24,900, the sum for which the premises were struck down upon the sale on February 20, 1901, and the sum for which said premises would be purchased on the resale thereof, together with any costs or expenses occurring on said resale, and any taxes, water rents, or assessments which had or might become liens on said premises between the sale of February 20, 1901, and the day of closing on a resale of the premises, together with $10 costs of the motion. A resale was had, and the plaintiff bid in the premises for the sum of $23,500. The difference between the two bids is $1,400. It is also made to appear that the expenses of the resale were $109.55, and the Croton water tax accrued between the first and second sales was the sum of $68. On the 5th of August, 1901, the plaintiff caused to be served on Thomas F. Baldwin a notice stating that the deficiency chargeable against him under the order of April 22, 1901, was the sum of $1,577.55, and a demand was made that he pay said sum to the referee; and further notice was given that upon his failure to do so within 10 days from the service of the notice the plaintiff's attorneys would move for an order punishing him for contempt of court by reason of his disobedience of the order of this court dated April 22, 1901. Payment not having been made, this application to punish for contempt was presented to the court, and the order appealed from was made. By that order it is adjudged that Thomas F. Baldwin is guilty of contempt in having willfully disobeyed the order of April 22, 1901, by reason of his refusal and failure to pay to the referee the deficiency, and that his conduct tended to and did hinder, delay, impede, and prevent the plaintiff from pursuing the remedy to which he is entitled by law; and it is further ordered, adjudged, and decreed that Thomas F. Baldwin pay to the clerk of the court the sum of $1,577.55, with $10 costs, for the use and indemnity of the plaintiff; and that he be imprisoned in the county jail of the county of New York until such sum be paid, and a commitment issue to carry this judgment into effect. This pro-

ceeding was instituted under subdivision 3 of section 14 of the Code of Civil Procedure, which section prescribes what contempts may be punished civilly. Subdivision 3 authorizes the punishment by fine or imprisonment, or either, of a person "a party to an action or special proceeding * * * for the nonpayment of a sum of money ordered or adjudged by the court to be paid in a case where by law execution cannot be awarded for the collection of said sum, or for any other disobedience of the lawful mandate of the court." Section 2284 of the Code relates to the amount of fine to be imposed, and provides that, "if any actual loss or injury has been produced to a party to an action or special proceeding by reason of the misconduct proved against the offender, * * * a fine sufficient to indemnify the aggrieved party must be imposed upon the offender and collected and paid over to the aggrieved party under the direction of the court. * * * Where it is not shown that such an actual loss or injury has been produced, a fine must be imposed, not exceeding the amount of the complainant's costs and expenses and $250 in addition thereto." In this case it would seem to be apparent that no foundation was laid in the order of April 22, 1901, for a contempt proceeding. Subdivision 3 of section 14 expressly relates to the disobedience of an order for the nonpayment of a sum of money ordered or adjudged by the court to be paid. No specific sum of money was adjudged to be paid by the order for the alleged disobedience of which Thomas F. Baldwin has been adjudged to be in contempt. It was impossible for him to know from that order how much money he should pay, and he was entitled to be heard upon that subject, and to have it expressly determined what amount, if any, he should pay, before contempt proceedings could be instituted. In Ross v. Butler, 57 Hun, 112, 10 N. Y. Supp. 444, it is said that, in order that a commitment may issue under any circumstances, the precise thing to be done by the party proceeded against must be stated in the judgment or order. Here there was no precise thing ordered to be done, except to pay an undetermined, and then undeterminable, amount. Who was to fix the amount which he should be required to pay before he would be brought within the peril of disobedience of an order of the court? It was not to be determined in the contempt proceeding itself, but was something to be ascertained and fixed definitely before such a proceeding could be begun. Here the plaintiff's attorneys, by a notice, have undertaken to fix the amount, or to have it fixed, in the contempt proceeding itself. The person moved against was never heard before the institution of the proceeding as to the amount for which he was liable, if any, and it is a fair subject of dispute whether he was liable for $1,577.55, or whether he could be fined only $250, or whether, upon the facts which now appear before us, a sufficient indemnity to the plaintiff would not have been the sum of $50 only. The order appealed from deprives the appellant of his personal liberty. In this case, as in the case of Ross v. Butler, above cited, when this proceeding was begun, the court had not determined the precise amount which the appellant was to pay, and until that was done he could not be subjected to this proceeding.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion to punish for contempt denied, with $10 costs. All concur.